UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| SHANIECE D., o/b/o A.D.,                : <br>         Plaintiff,                              : <br>                                          : <br>         v.                                          : <br>                                          : <br> MARTIN O'MALLEY,                        : <br> Commissioner of Social Security,        : <br>         Defendant.                           : | C.A. No. 23-112-WES |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      Before the Court is the motion of Plaintiff Shaniece D. ("the mother") on behalf of her school-age daughter, A.D. ("Plaintiff"), for reversal or remand of the decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income ("SSI"). ECF No. 9. Plaintiff contends that the administrative law judge ("ALJ") erred in finding that, despite severe attention deficit hyperactivity disorder ("ADHD"), a learning disorder ("LD") and anxiety, Plaintiff is not disabled because her limitations in three of the six functional domains listed in 20 C.F.R. § 416.926a(b)(1) – acquiring and using information; attending and completing tasks; and interacting and relating to others – are "less than marked."[1] ECF No. 9 at 3. Plaintiff argues that the ALJ failed to consider limitations reported in the record, which she contends make clear that she is markedly limited in all three of these domains and therefore suffers from impairments that functionally equal a Listing. ECF No. 9. The Commissioner's countermotion asserts that Plaintiff is effectively

---

[1] Plaintiff does not challenge the ALJ's finding that she has less than marked or no limits in the other three domains. Nor does she contend that the ALJ erred in finding that, analyzed in accordance with the requirements of the "Paragraph B criteria" in 20 C.F.R. § 404, Subpart P, App'x 1, Plaintiff's impairments in the four relevant areas of functioning are moderate and do not meet or medically equal any Listing. Her appeal focuses only on the ALJ's findings regarding the functional equivalence of Plaintiff's impairments to any Listing.

seeking a judicial reweighing of the evidence in a manner more favorable to Plaintiff; he asks the Court to eschew such a legally impermissible exercise and to affirm the ALJ's decision. ECF No. 12. The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

I.   **Background**

Among the earliest document of record is an individualized education program ("IEP") from 2019 when Plaintiff was in first grade and struggling with reading; this document reflects that she was "4 to 5 reading levels behind her grade level peers."[2] Tr. 337. In October 2019, a school department assessment was performed resulting in scattered intelligence scores ranging from "very low" (verbal comprehension) to "high average" (working memory), with "very elevated" scores for such issues as inattention, defiance and peer relations (at school but not at home). Tr. 330-335. At the end of 2019, Plaintiff was seen at the Providence Community Health Center ("PCHC") by Stacy Silva, LMHC, who noted Plaintiff's inability to concentrate, impulsivity and need for an IEP based on reading and mathematics; she diagnosed ADHD and referred Plaintiff to Dr. Jonathan Kole for treatment. Tr. 290-91. In January 2020, Dr. Kole saw Plaintiff and performed an MSE.[3] Based on his clinical observations, the diagnosis of ADHD and Plaintiff's problems related to education and literacy (reading and mathematics), he initiated

---

[2] In the IEP, this described discrepancy is framed in technical terms based on the administration of specific tests and the use of rating scales (compared to peers) based on those tests.

[3] An MSE or a mental status examination is an objective clinical assessment of an individual's mental ability based on a health professional's personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation." Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7, 2022) (internal quotation marks omitted) adopted by text order (D.R.I. Mar. 31, 2022).

treatment with medication for ADHD and to address sleep issues. Tr. 277-82. At this first appointment, Dr. Kole assessed the severity of Plaintiff's illness as "moderate."[4] Tr. 281.

Over the next few months, Plaintiff did not take the prescribed medication, according to her mother as reported to her primary care nurse practitioner, Megan Moore, because of problems with the pharmacy. Tr. 261-62. After a lapse, Plaintiff returned to Dr. Kole on May 11, 2020; as of that appointment, the COVID pandemic had begun, schools had closed, and remote learning was being initiated. Tr. 256-58. Dr. Kole noted the lapse in treatment and that COVID stress was resulting in "daily hyperactivity, inattention concerns," as well as that the school had referred Plaintiff to Family Services of Rhode Island ("FSRI"). Id. Tr. 258. At this appointment, Dr. Kole assessed the severity of Plaintiff's illness as "marked." Id. However, less than three weeks later, on May 29, 2020, Dr. Kole noted improvement since the switch in ADHD medication; he assessed that the severity of Plaintiff's illness had returned to "moderate." Tr. 250. At about the same time (on May 21, 2020), Plaintiff was assessed at FSRI on the school department referral. According to the FSRI assessment report, despite having just lost her grandmother due to COVID and not receiving the supports required by her IEP, Plaintiff was "friendly," "very social," with some close friends, though she displayed bullying, angry and oppositional behavior. Tr. 213-18. The FSRI report notes that Plaintiff recently began responding "much better" due to the change in ADHD medication. Tr. 216. Acknowledging functional areas of need to include education, behavior and social, the FSRI report concludes that Plaintiff is "an outgoing and friendly girl who is struggling with finding the motivation to do school work. . . . Since the [ADHD] diagnosis, client's mother feels some progress has been

---

[4] According to the form that Dr. Kole used to record his observations and assessment, "moderate" is at the midpoint on the severity rating scale, between the two less serious ratings ("minimal" or "mild") and the two more serious ratings ("marked" or "severe"). E.g., Tr. 281.

made . . . especially since client has started taking medication." Tr. 220. The FSRI report points out the significant challenges caused by the disruptions and losses due to the ongoing COVID pandemic and recommends that Plaintiff get more one-on-one attention and that her IEP be fulfilled. Tr. 217-220.

By September 2020, Dr. Kole observed that Plaintiff was "doing a bit better"; based on his observations, he assessed that the severity of Plaintiff's illness had dropped again, to "mild." Tr. 234-35. In October 2020, Nurse Practitioner Moore noted Plaintiff's mother's report that "her attention is good" and therapy at FSRI is "going well." Tr. 229-35. After another lapse in treatment, Plaintiff resumed in early 2021, with Elizabeth Bogus, LICSW, and Nurse Practitioner Angela Fontenot, instead of Dr. Kole. Tr. 311. Nurse Practitioner Fontenot increased Plaintiff's ADHD medication and assessed the severity of Plaintiff's illness as "mild." Tr. 365.

In November 2020 and again in March 2021, Plaintiff was assessed by her third-grade teacher. The teacher completed a Social Security Administration questionnaire focused on the six functional domains.[5] Tr. 176-92. She observed no "serious" or "very serious problem" in any function within any of the six domains; she noted an "obvious problem"[6] with all functions in the domain of acquiring and using information and in a few of the functions in the domain of attending and completing tasks; for the functions in the domain of interacting with others, she noted mostly a "slight problem" or "no problem." Tr. 176-92, 187-88.

---

[5] It is not clear whether these questionnaires were completed by two different teachers or just one at different points in the third-grade school year.

[6] "An obvious problem" is at the midpoint on the teacher rating scale, between the two less serious ratings ("no problem" or "a slight problem") and the two more serious ratings ("a serious problem" or "a very serious problem"). See e.g., Tr. 186.

This is the record that was reviewed by the non-examining expert psychologists, partly by Dr. Clifford Gordon and entirely by Dr. Michelle Olson on reconsideration.[7] The Disability Determination Explanations at the initial and reconsideration phases reference Plaintiff's ADHD, her difficulty with concentration and managing frustration, her reading at a first grade level ("4 to 5 reading level behind her supposed grade level"), her IQ scatter, including "very low" verbal reasoning, and her IEP. Tr. 43-46, 49-52. Both of these experts marshaled their professional and Social Security expertise, 20 C.F.R. § 416.913a(b)(1) ("highly qualified and experts in Social Security disability evaluation"), to make the prior administrative findings that Plaintiff's ADHD, LD and anxiety constitute severe impairments, but that she suffers from "less than marked" or no limits in the six functional equivalence domains, including "less than marked" limits in the domains of acquiring and using information, attending and completing tasks, and interacting with others. Tr. 43-46, 49-52.

During the ALJ's hearing, Plaintiff's mother testified that Plaintiff (by then age 9) was still below grade level; does not consistently understand or complete her homework or do her chores; has a tantrum when she cannot comprehend homework; generally can pack her backpack and get ready for school with help, but has a tantrum if she forgets something; hits her 5-year-old brother, but never her "baby" brother; has some close friends but wants to fight other children; and does not obey, including when told to shower or brush her teeth. Tr. 33-39. Also at the hearing, Plaintiff asked to submit another assessment from FSRI dated August 2021, which the ALJ agreed to accept. Tr. 32. This assessment notes a teacher's report of "good behavior for most of the school year with the exception of the last 2 months," and that Plaintiff took ADHD medication for only a "brief time during the 2020-2021 school year" and by May 2021 had

---

[7] Only Dr. Olson saw the two teacher questionnaires and the 2021 treating record.

stopped. Tr. 394, 398. It contains an MSE that is substantially similar to the MSE in the FSRI assessment from May 2020. Also submitted were new records from PCHC, which consistently score Plaintiff's illness severity as "mild." Tr. 424-25, 427-28, 433; see Tr. 420 ("things are generally working well").

There is no opinion from any source opining to marked or extreme limitations in any functional domain.

## II.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam). Once the Court concludes that the decision is supported by substantial evidence and that the Commissioner correctly applied the law, the ALJ's decision must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30. The Court may not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Hum. Servs., 877 F.2d 148, 153 (1st Cir. 1989) (per curiam)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez, 647 F.2d at 222).

**III.     Childhood Disability Determination**

A child under age eighteen is considered disabled and entitled to SSI benefits if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security regulations include a three-step test for the purpose of adjudicating children's disability claims under this standard. 20 C.F.R. § 416.924(a)-(d). That test requires the ALJ to determine: (1) whether the child is engaged in "substantial gainful activity," (2) whether the child has "a medically determinable impairment[ ] that is severe," and (3) whether the child's "impairment(s) . . . meet, medically equal, or functionally equal [a] list[ed impairment]." 20 C.F.R. § 416.924(b)-(d); see generally Fleetwood v. Colvin, 103 F. Supp. 3d 199, 202-03 (D.R.I. 2015). "The claimant seeking [childhood] benefits bears the burden of proving that his or her impairment meets or equals a listed impairment." Hall ex rel. Lee v. Apfel, 122 F. Supp. 2d 959, 964 (N.D. Ill. 2000) (citing Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999)).

In considering whether a child has an impairment or combination of impairments that functionally equals the severity of a listing, the six functional equivalence domains set forth in the regulations must be considered. 20 C.F.R. § 416.926a(b)(l). They are:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for oneself; and
6. Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi); SSR 09-2p, Title XVI: Determining Childhood Disability – Documenting a Child's Impairment – Related Limitations, 2009 WL 396032, at *1-2 (Feb. 18,

7

2009).  To qualify as functionally equivalent to a listing, the child's impairment "must result in [either] 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain."  20 C.F.R. § 416.926a(a).  The child has a "marked" limitation – i.e., one "that is 'more than moderate' but 'less than extreme'" – when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  Id. at § (e)(2)(i).  The child has an "extreme" limitation when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  Id. at § (e)(3)(i).  According to the guidance in SSR 09-2p, this is a complex and nuanced analysis that requires consideration of the "whole child," including an examination of the child's level of development and functioning in relation to unimpaired peers of the same age, including how the child functions at home, in school, and in the community in each of the six domains without the supports (such as an IEP) that are not needed by unimpaired children of the same age.  See generally, SSR 09-2p, 2009 WL 396032, at *1-11.

**IV.   Analysis**

Plaintiff argues that the ALJ erred because his analysis of the teacher questionnaires was overly superficial and failed to consider the "details," such as Plaintiff's struggles with learning, particularly her below-grade-level academic performance.  ECF No. 9 at 9.  She also contends that the ALJ ignored "significant findings and detailed opinions" in the FSRI assessments, such as references to Plaintiff's "restless, silly and preoccupied behavior."  ECF No. 13 at 2.

The problem with this argument is that the ALJ did not ignore any such findings and details.  To the contrary, all of the details that Plaintiff relies on, and more, were considered and interpreted by the non-examining expert psychologists, especially the expert at the reconsideration phase, Dr. Olson, who deployed her expertise to analyze and interpret this

complex and nuanced record, including the technical findings in the teacher questionnaires and behavioral observations in the 2020 FSRI assessment, and who found no marked limitations. The ALJ found the findings of the psychology experts to be persuasive (a finding that Plaintiff has not challenged) and relied on them in performing his own analysis of the record. Further, although the 2021 FSRI report was not seen by the non-examining psychologists, as the ALJ supportably found, it is not materially different from the 2020 assessment, which was in the materials that these experts received and interpreted in light of Social Security standards. And far from being "neglect[ed]" by the ALJ, as Plaintiff argues, ECF No. 9 at 9, both FSRI assessments are addressed by the ALJ in his decision. See Tr. 17, 20-23.

      Corroborating the ALJ's findings in the domain of attending and completing tasks are the treating sources at PCHC, who saw Plaintiff over the course of the period in issue, received reports regarding Plaintiff's functional challenges at home and in school and treated her for ADHD and "[e]ducation and [l]iteracy" problems. Tr. 420. At all but one of these encounters, these providers assessed the severity of Plaintiff's illness as either "mild" or "moderate." The only time any PCHC provider found Plaintiff's illness severity had exacerbated to "marked" was at the first COVID-pandemic era appointment with Dr. Kole; however, within less than three weeks, he reassessed Plaintiff's illness severity as back to "moderate," and within less than four months, as "mild," which rating was sustained for the balance of the period covered by the record. Tr. 235, 250, 258. The ALJ's finding in this domain is also amply corroborated by the third-grade teacher, who assessed Plaintiff's attentional limits as mostly "slight problem[s]," with only a few functions constituting as much as "an obvious problem." Tr. 178, 187. Indeed, Plaintiff points to nothing in this record to support a finding that her attentional limits were marked or extreme over the requisite period of not less than twelve months.

9

Also well supported is the ALJ's finding regarding the domain of interacting and relating to others, beginning with the observation of the classroom teacher who scored Plaintiff as having no more than a "slight problem" in almost all of the functions in this domain, Tr. 179, 188, as well as the FSRI assessments that both describe Plaintiff as a "friendly" child, Tr. 220, 391, "very social" with "some close friends," e.g., Tr. 213. The non-examining psychologists considered this evidence, along with the references to Plaintiff's aggressive and bullying behavior (when frustrated or to get her own way), including the mother's statements about Plaintiff's social challenges, to make their finding that Plaintiff has social limits but they are less than marked, on which the ALJ appropriately relied. Importantly, no opinion evidence has been presented to support a finding that Plaintiff's social limits were marked or extreme over a period of not less than twelve months.

That leaves the domain of acquiring and using information – this is the domain in which the third-grade teacher deemed Plaintiff to be most limited. Tr. 177, 186. However, despite noting Plaintiff's below-grade-level academic performance, this teacher scored Plaintiff at the midpoint on the severity scale in relation to unimpaired peers, that is, two levels below the most serious. See id. Further, much of the rest of the pertinent evidence consists of technical educational observations as reflected (for example) in the IQ testing report and the IEPs, both of which compare Plaintiff in technical terms to unimpaired peers. The ALJ appropriately interpreted this technical evidence in reliance on the expert findings of the state agency psychologists. In addition, as the ALJ accurately noted, the picture pertaining to this domain is mixed: for example, Plaintiff's primary care provider observed that, by February 2021, Plaintiff was reading and doing mathematics on grade level, Tr. 370, while the teacher's questionnaire from March 2021 noted an improvement in reading (from first to second grade) but that Plaintiff

was still at first-grade level in mathematics and written language, Tr. 185, and FSRI's August 2021 assessment noted that "she continues to struggle with keeping up." Tr. 391. What matters to the Court is that the ALJ made his findings based on consideration of this evidence, with expert guidance from the expert psychologists. Plaintiff may disagree with the ALJ's weighing of this evidence but does not point to any error in his analysis or show that the decision is not supported by substantial evidence.

In sum, despite Plaintiff's protest on reply, the Commissioner is right that Plaintiff's motion to remand boils down to an improper request that the Court reweigh the evidence of record to reach a different result. See David H. v. Kijakazi, C.A. No. 21-333WES, 2022 WL 2816775, at *4 (D.R.I. July 19, 2022), adopted by text order (D.R.I. Sept. 13, 2022). I decline that invitation. In a detailed decision, the ALJ appropriately weighed all of the evidence in reliance on the persuasive expert interpretations from the state agency psychologists. In so doing, he committed no error of law and has made findings that are well supported by the substantial evidence of record. Having reviewed the entirety of the record, I find that this is a case where the Court "must uphold the Secretary's findings" because, "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Manuel P. v. Saul, C.A. No. 20-234PAS, 2021 WL 949345, at *2 (D.R.I. Mar. 12, 2021) (internal quotation marks omitted). Therefore, I recommend that the Court affirm the ALJ's decision.

## V.     Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (ECF No. 9) be DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 12) be GRANTED. Any objection to this report

and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 8, 2024